IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal Case No.: RDB-14-577 |
| | * | |
| JOHN EDWARD HAYES | * | |
| | * | |
| Defendant | * | |

*******************************************************************************

DEFENDANT'S MOTION TO DISMISS ALLEGED VIOLATION OF 18 U.S.C. § 924(c)

The Defendant, John Edward Hayes, by and through his attorney, David R. Solomon, Esquire, hereby moves this Honorable Court, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), to dismiss Count Seven, an alleged violation of 18 U.S.C. § 924(c), for failure to state a claim.

## INTRODUCTION

Count Seven of the indictment charges Mr. Hayes with possession of a firearm during and in relation to a "crime of violence" in violation of 18 U.S.C. § 924(c). The alleged "crime of violence" underlying the § 924(c) charge is armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d) (Count Seven). This offense is not a "crime of violence" as defined by 18 U.S.C. § 924(c)(3)(A) and (B).

In particular, bank robbery under § 2113(a) categorically fails to constitute a "crime of violence" under § 924(c)(3)(A) ("the force clause") because it can be accomplished by "intimidation," which does not require 1) an intentional threat 2) of violent physical force. Section 2113(d), which requires the additional element of a dangerous weapon, does not change this result. Nor does bank robbery under § 2113(a) and (d) constitute a crime of violence under the "residual clause" within § 924(c)(3)(B) because the clause is unconstitutionally

vague in light of Johnson v. United States, __ U.S.__, 135 S. Ct. 2551 (June 26, 2015). The government, therefore, cannot prove, as a matter of law, a "crime of violence" necessary to sustain a § 924(c) conviction. Thus, the § 924(c) charge alleged in Count Two must be dismissed.

## STATUTES INVOLVED

This motion primarily concerns the following federal statutes:

1) 18 U.S.C. § 2113(a) (Bank Robbery)

Section 2113(a), in pertinent part, provides:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . shall be [punished in accordance with the remainder of the statute].

2) 18 U.S.C. § 2113(d) (Armed Bank Robbery)

Section 2113(d), in pertinent part, provides:

> Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be [punished in accordance with the remainder of the statute].

3) 18 U.S.C. § 924(c)

Section 924(c)(1)(A), in pertinent part, provides:

> . . . any person who, during and in relation to a crime of violence. . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, shall, or who in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence [be punished in accordance with the remainder of the statute].

Section 924(c)(3) defines "crime of violence" as follows:

> (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and —
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

## ARGUMENT

### I. Bank robbery under §§ 2113(a) and (d) fails to qualify as a "crime of violence" because it does not require 1) an intentional threat 2) of violent physical force.

The Court must dismiss Count Seven, the alleged § 924(c) violation, because the alleged "crime of violence" underlying the charge – bank robbery under § 2113(a) and (d) – does not qualify as a "crime of violence" as a matter of law. As noted in the prior section, the subsection of § 924(c) that defines "crime of violence" has two clauses. The first clause – 924(c)(3)(A) – is commonly referred to as "the force clause." The second clause – 924(c)(3)(B) – is commonly referred to as "the residual clause." As discussed in the next sections, bank robbery under § 2113(a) categorically fails to qualify as a crime of violence under the force clause because the offense can be committed through "intimidation," which does not require 1) an intentional threat 2) of violent physical force. Section 2113(d), which adds an element requiring the use of a dangerous weapon, does nothing to alter this result.

Further, § 924(c)(3)'s residual clause, post-*Johnson*, is constitutionally incapable of supporting a conviction due to vagueness of the residual clause,

**A. The categorical approach applies in determining whether bank robbery qualifies as a "crime of violence."**

To determine whether a predicate offense qualifies as a "crime of violence" under § 924(c), courts use the categorical approach. See Descamps v. United States, 133 S. Ct. 2276, 2283 (2013); United States v. Royal, 731 F.3d 333, 341-42 (4th Cir. 2014); see also United States v. Fuertes, 805 F.3d 485, 498 (4th Cir. 2015); United States v. Serafin, 562 F.3d 1105, 1107-08 (10th Cir. 2009); United States v. Acosta, 470 F.3d 132, 135 (2d Cir. 2006). This approach requires that courts "look only to the statutory definitions – i.e., the elements – of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "crime of violence." Descamps, 133 S. Ct. at 2283 (citation omitted); Royal, 731 F.3d at 341-42; Serafin, 562 F.3d at 1107; Acosta, 470 F.3d at 135. In addition, under the categorical approach, a prior offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute – "including the most innocent conduct" – matches or is narrower than the "crime of violence" definition. United States v. Torres-Miguel, 701 F.3d 165, 167 (4th Cir. 2012). If the most innocent conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence."

**B. Federal bank robbery under § 2113(a) fails to constitute a "crime of violence" because it can be accomplished merely by intimidation, which does not require 1) an intentional threat of 2) violent physical force.**

Under the current legal framework, in order for an offense to qualify as a "crime of violence"

under § 924(c)(3)'s force clause, the offense must have an element of "physical force." And "physical force" means "*violent* force" – that is "strong physical force," which is "capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140 (2010) (emphasis in original).[1] Federal bank robbery, as defined by § 2113(a), does not meet this requirement because it can be accomplished by "intimidation," which does not require the use, attempted use, or threatened use of "*violent* force." Additionally, because "intimidation" under the federal bank robbery statute can be accomplished without an *intentional* threat of physical force, it fails to satisfy the *intentional* mens rea required under the force clause.

The government's concession with respect to Maryland common law robbery is instructive here. The government recently conceded that Maryland common law robbery does not qualify as a "violent felony" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), "force" clause, which is almost identical to the "force" clause in § 924(c)(3)(A). See Br. of Appellee, at 73, United States v. Louis Martin, No. 14-4779 (4th Cir. Sept. 14, 2015) If Maryland robbery does not qualify as a "crime

---

[1]Courts of Appeals have consistently held that 18 U.S.C. § 16(a) (which is the same as § 924(c)(3)(A)) contemplates "destructive," "violent force" – not *de minimis* force. *United States v. Landeros-Gonzales*, 262 F.3d 424, 426 (5th Cir. 2001); *see also Flores-Lopez v. Holder*, 685 F.3d 857, 864 (9th Cir. 201) (requiring "use of violent, physical force"); *United States v. Serafin*, 562 F.3d 1105, 1109 (10th Cir. 2009); *Jobson v. Ashcroft*, 326 F.3d 367, 373 (2d Cir. 2003); *Bazan-Reyes v. INS*, 256 F.3d 600, 611 (7th Cir. 2001) ("[T]erm 'physical force' in 18 U.S.C. § 16(b) refers to actual violent force."). Indeed, the Supreme Court in *Johnson* cited lower court opinions defining physical force under § 16 when defining "physical force" in the ACCA. 559 U.S. at 140 (citing *Flores*, 350 F.3d at 672).

of violence" under the "force" clause, neither does federal bank robbery because both offenses are defined the same.

### 1. Intimidation does not equal the use, attempted use, or threatened use of "violent force."

It is well settled that that "intimidation" under the federal bank robbery statute only occurs when "an ordinary person in the [victim's position] reasonably could infer a threat of *bodily harm* from the defendant's acts." United States v. Woodrop, 86 F.3d 359, 364 (4th Cir. 1996) (emphasis added); see also United States v. Pickar, 616 F.2d 821, 825 (2010) (same); United States v. Kelley, 412 F.3d 1240, 1241 (2005) (same); United States v. Yockel, 320 F.3d 818, 824 (8th Cir. 2003) (same); United States v. Higdon, 832 F.3d 312, 315 (5th Cir. 1987) (same). Applying this intimidation definition here, even assuming that the act of placing another in fear of bodily harm constitutes a threat of physical injury, it still fails to qualify as a "crime of violence" under the force clause because it does not require the use or threatened use of "violent force" against another. The Fourth Circuit's decision in Torres-Miguel, 701 F.3d 165, is directly on point. Indeed, in that case, the Fourth Circuit unequivocally held that the threat of any physical injury, even "serious bodily injury or death," does not necessarily require the use of physical force – let alone "violent force."

In Torres-Miguel, at issue was the defendant's prior conviction for the California offense of willfully threatening to commit a crime which "will result in death or great bodily injury to another." 701 F.3d at 168 (citing Cal. Penal Code § 422(a)) (emphasis added). The specific question in the case was whether the statute had an element equating to a threat of "violent force" under the force clause of

U.S.S.G. § 2L1.2 – a clause that is identical in all relevant respects to the § 924(c)(3)(A) force clause. Id. Despite the "death or great bodily injury" element in the California statute, the Fourth Circuit found that the offense was missing a "violent force" element, and thus, could never qualify as a "crime of violence" under the force clause. Id. at 168-69. The Court blanketly held that "[a]n offense that *results* in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of crime of violence." Id. at 168. The Court, in strong words, proclaimed that "of course, a crime may result in death or serious injury without involving use of physical force." Id. (emphasis added).

The Court, relying on several appellate decisions from various Circuits, reasoned that there are many ways in which physical injury – even death – can result without use of "violent force." Id. at 168-69. "For example, as the Fifth Circuit has noted, a defendant can violate statutes like § 422(a) by threatening to poison another, which involves no use or threatened use of force." Torres-Miguel, 701 F.3d at 168-69 (citing United States v. Cruz-Rodriguez, 625 F.3d 274, 276 (5th Cir. 2010)).

In reaching its decision, the Torres-Miguel Court also relied on the Second Circuit's decision in Chrzanoski v. Ashcroft, 327 F.3d 188, 194 (2d Cir. 2003). In that case, at issue was whether a prior Connecticut conviction for third degree assault qualified as a "crime of violence" under the force clause. The Connecticut statute "require[s] the state to prove that the defendant had intentionally caused physical injury." Chrzanoski, 327 F.3d at 193. Nonetheless, the "Second Circuit [] held that [the statute] does not constitute a crime of violence . . . because there is a difference between causation of an injury, which

is all that the Connecticut statute [] required, and an injury's causation by the use of physical force." Torres-Miguel, 701 F.3d at 169 (citing Chrzanoski, 327 F.3d at 194) (internal quotation marks omitted).

The Second Circuit explained that "an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission." 327 F.3d at 195. The Court elaborated that "human experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient" or someone who causes physical impairment by placing a tranquilizer in the victim's drink. Id. at 195-56.

For even further support, in Torres-Miguel, 701 F.3d at 169, the Fourth Court embraced the Tenth Circuit's decision in United States v. Perez-Vargas, 414 F.3d 1282, 1287 (10th Cir. 2005). In that case, the Tenth Circuit "explained that although the Colorado [third degree assault] statute required [an act causing] bodily injury [by means of a deadly weapon], imposing that injury does not necessarily include the use or threatened use of physical force as required by the Guidelines and so the Colorado crime was not categorically a crime of violence under U.S.S.G. § 2L1.2." Torres-Miguel, 701 F.3d at 169 (citing Perez-Vargas, 414 F.3d at 1287) (internal quotation marks omitted). The Tenth Circuit reasoned that "several examples [exist] of third degree assault that would not use or threaten the use of physical force: . . . intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals." Perez-Vargas, 414 F.3d at 1286.

Therefore, Torres-Miguel and all the other cases discussed above command that federal bank robbery, which can be accomplished by putting another in fear of bodily harm, does not require "violent force." If threat of serious bodily injury or death does not equal violent force, then certainly, threat of "bodily harm" does not. Indeed, a defendant can place another in fear of bodily harm by threatening to poison that person, to release hazardous chemicals on that person, or to lock that person up in a room without food or water – some of the very examples that the Fourth Circuit in Torres-Miguel as well as the other Courts mentioned above held do not constitute "violent force."

Because "the full range of conduct" covered by the bank robbery statute does not require "violent force," it simply cannot qualify as a "crime of violence" under § 924(c)(3)'s force clause. Torres-Miguel, 701 F.3d at 171. And it makes no difference that the possibility of violating the bank robbery statute without the use or threat of violent physical force may be slim. Because the possibility exists, this Court cannot legally find that bank robbery is a "crime of violence." Indeed, in Torres-Miguel, the Court did not cite to a single case in which an offense under the California threat statute was violated with the threat of poisoning or some other non-violent force; yet, the Fourth Circuit still found that because the elements of the offense left open the possibility that one could be prosecuted under the statute for the use of non-violent force, the prior offense categorically failed to qualify as a "crime of violence." Id. at 171. The Court should find the same here with respect to the federal bank robbery statute, which leaves open the same possibility.

2. Intimidation does not require an intentional threat of violent force necessary under the § 924(c)(3)(a) force clause.

Even more, "intimidation" as defined under the bank robbery statute does not constitute a "crime of violence" under the force clause because it does not require an intentional threat of physical force. In Garcia v. Gonzales, 455 F.3d 465, 468 (4th Cir. 2006), the Fourth Circuit firmly held that an offense can only constitute a "crime of violence" under the force clause if it has an element that requires an "intentional employment of physical force [or threat of physical force]." Id. (emphasis added). See also Bejarano-Urrutia v. Gonzales, 413 F.3d 444, 447 (4th Cir. 2005) (same); United States v. Dixon, __F.3d__, 2015 WL 7422615, at *4 (9th Cir. 2015) (holding California bank robbery does not constitute "violent felony" under the ACCA force clause because the offense does not require intentional use of force). All other Circuits have held the same, many of them relying on the Fourth Circuit's holding in Garcia and Bejarano-Urrutia.[2] See also United States v. King, 979 F.2d 801, 803 (10th Cir. 1992) (holding that "threatened use of force" in the ACCA force clause "means both *an intent* to use force and a communication of that threat") (citing Black's Law Dictionary 1480 (6th ed. 1990)) (emphasis added).

[2]See United States v. Palomino Garcia, 606 F.3d 1317, 1335-36 (11th Cir. 2010) (citing Garcia and Bejarano-Urrutia); Jimenez-Gonzalez v. Mukasey, 548 F.3d 557, 560 (7th Cir. 2008); United States v. Zuniga-Soto, 527 F.3d 1110, 1124 (10th Cir. 2008) (citing Bejarano-Urrutia); United States v. Torres-Villalobos, 487 F.3d 607, 615-16 (8th Cir. 2007) (citing Bejarano-Urrutia); United States v. Portela, 469 F.3d 496, 499 (citing Garcia and Bejarano-Urrutia); Fernandez-Ruiz v. Gonzales, 466 F.3d 1121, 1127-32 (9th Cir. 2006) (en banc) (citing Bejarano-Urrutia); Oyebanji v. Gonzales, 418 F.3d 260, 263-65 (3d Cir. 2005) (citing Bejarano-Urrutia); Jobson v. Ashcroft, 326 F.3d 367, 373 (2d Cir. 2003); United States v. Chapa-Garza, 243 F.3d 921, 926 (5th Cir. 2001).

It is well settled that the "intimidation" element of federal bank robbery is missing this necessary intentional mens rea. "Intimidation" is satisfied under the bank robbery statute "whether or not the defendant actually intended the intimidation," as long as "an ordinary person in the [victim's] position reasonably could infer a threat of bodily harm from the defendant's acts." Woodrup, 86 F.3d at 36. See also United States v. Yockel, 320 F.3d 818, 821 (8th Cir. 2003) (upholding bank robbery conviction even though there was no evidence that defendant intended to put teller in fear of injury: defendant did not make any sort of physical movement toward the teller and never presented her with a note demanding money, never displayed a weapon of any sort, never claimed to have a weapon, and by all accounts, did not appear to possess a weapon); United States v. Kelley, 412 F.3d 1240, 1244 (11th Cir. 2005) ("Whether a particular act constitutes intimidation is viewed objectively, . . . and a defendant can be convicted under [federal bank robbery] even if he did not intend for an act to be intimidating."); United States v. Foppe, 993 F.2d 1444, 1451 (9th Cir. 1993) (same). In other words, a defendant may be found guilty of federal bank robbery even though he did not intend to put another in fear of injury. It is enough that the victim reasonably fears injury from the defendant's actions – whether or not the defendant actually intended to create that fear. Due to the lack of this intent, unarmed federal bank robbery criminalizes conduct that does not require an intentional threat of physical force. Therefore, unarmed bank robbery squarely fails to qualify as a "crime of violence" under Garcia.

3. The government has conceded that Maryland common law robbery does not qualify as a "violent felony" under the ACCA force clause; it follows that federal bank robbery, which is defined the same as Maryland robbery, also does not qualify as a "crime of violence" under the § 924(c)(3)(a) force clause.

The government recently conceded before the Fourth Circuit that Maryland common law robbery is not a "violent felony" under the ACCA force clause, which is nearly identical to the § 924(c)(3)(A) force clause. See Br. of Appellee, at 73, United States v. Louis Martin, No. 14-4779 (4th Cir. Sept. 14, 2015) ("In light of [Johnson], and the government's analysis of Maryland's interpretation of its crime of common law robbery, the government agrees that the defendant's earlier robbery conviction . . . does not qualify as a 'violent felony' for purposes of the Armed Career Criminal Act."). Because federal bank robbery, like Maryland robbery, can be accomplished by intimidation, i.e., putting another in fear of injury, it follows that federal bank robbery also fails to qualify as a "crime of violence" under the "force" clause for all the above-discussed reasons. See Coles v. State, 821 A.2d 389, 397 (Md. 2003) (finding that Maryland robbery's "intimidation" element is the same as that in federal bank robbery).

**B. Section 2113(d), which requires nothing more than openly carrying a dangerous weapon, does not convert federal bank robbery into a "crime of violence."**

To prove the more serious offense of armed bank robbery under § 2113(d), the government must establish that during the commission of the bank robbery, the defendant "either assaulted another person by the use of a dangerous weapon or device, or the defendant put another person's life in jeopardy by the use of a dangerous weapon or device." See Modern Federal Jury Instructions, 53-14 (citing United States v. Midgett, 488 F.3d 288 (4th Cir. 2007)). "Use of a dangerous weapon" means "brandishing, displaying or even referring to the weapon." Id. The government may prove either that the defendant

assaulted another person by the use of a dangerous weapon or device, or that he put another person's life in jeopardy by the use of a dangerous weapon or device; it need not prove both. Id. Neither of these means under § 2113(d) converts a bank robbery into a "crime of violence" under the force clause of § 924(c)(3)(A). Specifically, assaulting another person by the use of a dangerous weapon does not require the threat or use of violent physical force. And putting another person's life in jeopardy by the use of a dangerous weapon or device does not require an 1) the intentional threat

2) of violent physical force.

**1. Assaulting another person by the use of a dangerous weapon or device does not require the threat or use of violent physical force.**

To begin with, Torres-Miguel dictates that the act of assaulting another person by the use of a dangerous weapon or device does not require the use or threat of violent physical force. Such act can be accomplished by "inflict[ing] or attempt[ing] to threaten to inflict physical harm on [a] person by the immediate use of a dangerous weapon." Modern Federal Jury Instructions, 53-14 (emphasis added). "Dangerous weapon," in turn, is broadly defined as "anything capable of inflicting serious bodily harm or injury upon another person." Id. (emphasis added). However, in Torres- Miguel, the Fourth Circuit squarely held that threatening or actually inflicting physical injury, serious physical injury, or even death can be accomplished by actions without the use or threat of violent physical force; therefore, the "physical harm" and "serious bodily harm or injury" requirements of § 2113(d) likewise can be satisfied without the use or threat of violent physical force.

To be sure, under the above-referenced terms of assault with a dangerous weapon , it is plain that one can be convicted of armed bank robbery under § 2113(d) by threatening to poison or expose the teller to a hazardous gas – exactly the type of conduct that Torres-Miguel held does not equal violent physical force. Torres-Miguel, 701 F.3d at 168-69 (citing United States v. Cruz-Rodriguez, 625 F.3d 274, 276 (5th Cir. 2010)). Further, the Tenth Circuit's decision in Perez-Vargas, 414 F.3d at 1285-86, is directly on point. As earlier referenced, in Perez-Vargas, the Tenth Circuit held that a Colorado assault statute which criminalized knowingly "caus[ing] bodily injury to another person by the means of a deadly weapon" did not qualify as a "crime of violence" under the force clause. Id. The Tenth Circuit explained that because the offense could be accomplished by actions such as "intentionally exposing someone to hazardous chemicals," it did not require physical force. Id. at 1286. For this same reason, armed bank robbery under § 2113(d) is also not a "crime of violence" under the force clause.

**2. Putting another person's life in jeopardy by the use of a dangerous weapon does not require 1) an intentional threat 2) of violent physical force.**

The final reason why armed bank robbery under § 2113(d) fails to qualify as a "crime of violence" is because putting another person's life in jeopardy can be accomplished without 1) an intentional threat 2) of violent physical force. "To put another's life in jeopardy is to expose that person to a risk of death by the use of a dangerous weapon or device." See Modern Federal Jury Instructions, 53-14. In other words, this means the "defendant placed someone in a state of danger" by "display[ing] or bradish[ing] what appears to a be a dangerous weapon during the robbery." Id.

a. No threat of violent physical force required.

Under the above-described terms of § 2113(d), a defendant can put another in danger through the use or threatened use of poison or hazardous chemicals – the exact conduct that the Fourth Circuit in Torres-Miguel, 701 F.3d at 168, and the Tenth Circuit in Perez-Vargas, 414 F.3d at 1286, concluded does not constitute violent physical force. Moreover, that this conduct could threaten someone's life does not change the result. Indeed, in Torres- Miguel, the California statute at issue criminalized a threat of death, yet, the Fourth Circuit found that because actual death or threat of death could be accomplished absent violent physical force, the California statute failed to qualify as a "crime of violence" under the force clause. 701 F.3d at 168 ("Of course, a crime may result in death or serious injury, without involving use of physical force."). This Court should find the same here.

b. No intentional threat required.

Even more, a defendant can place someone's life in jeopardy under § 2113(d) without any intent to threaten or use violent physical force. Indeed, a defendant can violate this provision merely by carrying a gun during the bank robbery because "he feels secure with it," even though he has no intent to intimidate another. United States v. Martinez-Jimenez, 864 F.2d 664, 667 (9th Cir. 1989) No nexus is required between the weapon and the intimidation required under § 2113(a). He "need not brandish" the weapon "in a threatening manner" or "make assaultive use of the device." Id.;see also United States v. Bennett, 675 F.2d 596, 599 (4th Cir. 1982) ("A weapon openly exhibited by a robber during a robbery" without more is sufficient to constitute a violation under § 2113(d)). Therefore, armed robbery under

§ 2113(d) fails to satisfy the intentional mens rea requirement of Garcia, 455 F.3d at 468. For this reason and all the other reasons discussed above, a federal bank robbery under §§ 2113(a) and (d) fails to qualify as a "crime of violence" under the § 924(c) force clause.

## II. Section 924(c)(3)'s residual clause is unconstitutionally vague and cannot support a conviction under the statute.

Since federal bank robbery under §§ 2113(a) and (d) fails to qualify as a "crime of violence" under § 924(c)(3)'s force clause, the remaining question is whether it can qualify as a "crime of violence" under § 924(c)(3)'s residual clause. It cannot under Johnson. In Johnson, the Supreme Court decided ACCA's "residual clause" is unconstitutionally vague, but the decision equally applies to the parallel "crime of violence" definition in § 924(c)(3)'s residual clause. Section 924(c)(3)(B) suffers from the same flaws that compelled the Supreme Court to declare the ACCA residual clause void for vagueness. Using § 924(c)(3)(B) to categorize a predicate conviction as a "crime of violence" therefore violates due process. Indeed, the Ninth Circuit recently recognized as such in Dimaya v. Lynch, 803 F.3d 1110, 1111 (9th Cir. 2015), by holding that the residual clause of 18 U.S.C. § 16(b), which is identical to § 924(c)(3)(B), is void for vagueness under Johnson. The Ninth Circuit is correct for all the reasons discussed below.

### A. Johnson expressly overruled the "ordinary case" approach to determining whether a felony qualifies as a "crime of violence."

In Johnson, the Supreme Court held that the ACCA residual clause is unconstitutionally vague because the process by which courts categorize prior convictions as violent felonies is too "wide-ranging"

and "indeterminate." 135 S. Ct. at 2557. As a result, the ACCA "both denies fair notice to defendants and invites arbitrary enforcement by judges." Id. Johnson concluded that the Supreme Court's four previous attempts to articulate a workable test to determine whether a felony falls under the ACCA residual clause had failed. Id. at 2558-59.

The Court began its analysis by explaining that, under Taylor v. United States, 495 U.S. 575 (1990), the ACCA requires the categorical approach to determine whether a particular statute qualifies as a violent felony.[3] Id. at 2557. Courts must assess whether a crime qualifies as a violent felony "in terms of how the law defines the offense and not in terms of how an individual might have committed it on a particular occasion." Id. (quoting Begay v. United States, 553 U.S. 137, 141 (2008)).

The Court further clarified that the residual clause "requires a court to picture the kind of conduct that the crime involves 'in the ordinary case,' and to judge whether that abstraction presents a serious risk of potential injury." Id. (citation omitted). The Court linked the "ordinary case" framework to James v. United States, 550 U.S. 192 (2007), in which it held, "We do not view that approach as requiring that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony. . . Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." Id. at 208 (citations omitted). "As long as the offense is of a type that, by its

---

3 The Court reaffirmed the vitality of the categorical approach, despite the government's and a dissenting justice's invitation to abandon it in residual clause cases. Id. at 2557, 2562.

nature, presents a serious risk of injury to another, it satisfies the requirements of [the ACCA's] residual clause." Id. at 209 (emphasis added, brackets supplied).

Johnson concluded that the process of determining what is embodied in the "ordinary case" rather than "real-world facts" is fatally flawed, rendering the ACCA unconstitutionally vague. "Grave uncertainty" surrounds the method of "determin[ing] the risk posed by the "judicially imagined 'ordinary case.'" 135 S. Ct. at 2557. "The residual clause offers no reliable way to choose between . . . competing accounts of what 'ordinary' . . . involves." Id. at 2558 (emphasis added).

The Johnson Court considered and rejected different ways that a court might envision the hypothetical "ordinary case" since the statute offers no guidance. Specifically, the Court explained that a statistical analysis of reported cases, surveys, expert evidence, Google, and gut instinct are all equally unreliable in determining the "ordinary case." Id. at 2557 (quoting United States v. Mayer, 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, J., dissenting from denial of rehearing en banc)). Although earlier ACCA cases tried to rely on statistical analysis and "common sense," Johnson concluded that these methods "failed to establish any generally applicable test that prevents the risk comparison required by the residual clause from devolving into guesswork and intuition." Id. at 2559 (referring to Chambers v. United States, 555 U.S. 122 (2009), and Sykes v. United States, 564 U.S. 1 (2011)).

This flaw alone establishes the residual clause's unconstitutional vagueness. The Court, however, explained that a closely related flaw exacerbates the problem. The Court noted that the residual clause lacks a meaningful gauge for determining when the quantum of risk under the "ordinary case" of a

particular statute is enough to constitute a "serious potential risk of physical injury." Id. at 2558. Although the level of risk required under the residual clause must be similar to the enumerated offenses (burglary, arson, extortion, or crimes involving use of explosives), Johnson rejected the notion that comparing a felony's "ordinary case" to the risk posed by certain enumerated offenses cures the constitutional problem. Id.

The enumerated offenses failed to save the ACCA residual clause because, according the majority, comparing felonies to enumerated offenses similarly requires resorting to "a judicially imagined abstraction." Id. Before courts may even start the comparison, they must first determine what the "ordinary" enumerated crime entails. But the "ordinary" enumerated crimes, Johnson emphasized, like any other crime, "are far from clear in respect to the degree of risk each poses." Id. (quoting Begay v. United States, 553 U.S. 137, 143 (2008)). Any attempt to figure out the "ordinary" enumerated offense requires just as much guesswork as figuring out the "ordinary" predicate offense. The Court held that such indeterminacy, unpredictability, and arbitrariness inherent in the "ordinary case" analysis is more than the "Due Process Clause tolerates." Id.

Thus, Johnson not only invalidated the ACCA residual clause, but it invalidated the "ordinary case" analysis and statutory provisions that compel such an analytical framework. In other words, the only way to apply the residual clause is to use the "ordinary case" analysis, and the "ordinary case" analysis is impossible to apply in a constitutional manner.

B. Johnson Means That § 924(c)(3)(B) Is Unconstitutionally Vague.

The statutory phrase at issue in this case is essentially the same as the ACCA residual clause.[4] To be sure, 18 U.S.C. § 924(e)(2)(B)(ii) and 18 U.S.C. § 924(c)(3)(B) are not identical.[5] But the differences have no impact on the constitutional analysis. Although the risk at issue in the ACCA is a risk of injury, and the risk at issue in Section 924(c) is a risk that force will be used, this difference is immaterial to the due process problem and has no impact on the Johnson decision.[6] The Court's holding

[4] Courts regularly compare the similarities between the residual clause in the ACCA to the clause at issue here. (Although the comparison tends to specifically address 18 U.S.C. § 16(b), that statute is identical to § 924(c)(3)(B).) See, e.g., Chambers, 555 U.S. at 133, n.2 (2009) (citing circuit splits on § 16(b) in the context of a residual clause case because § 16(b) "closely resembles ACCA's residual clause") (Alito, J., concurring). See United States v. Ayala, 601 F.3d 256, 267 (4th Cir. 2010) (relying on an ACCA case to interpret the definition of a crime of violence under § 924(c)(3)(B)); United States v. Aragon, 983 F.2d 1306, 1314 (4th Cir. 1993) (same). See also United States v. Keelan, 786 F.3d 865, 871 n.7 (11th Cir. 2015) (describing the ACCA otherwise clause and § 16(b) as "analogous"); Roberts v. Holder, 745 F.3d 928, 930-31 (8th Cir. 2014) (using both ACCA cases and § 16(b) cases to define the same "ordinary case" analysis); United States v. Sanchez-Espinal, 762 F.3d 425, 432 (5th Cir. 2014) (despite the fact that the ACCA talks of risk of injury and § 16(b) talks of risk of force, "we have previously looked to the ACCA in deciding whether offenses are crimes of violence under § 16(b)").

[5] In pertinent part, the ACCA residual clause defines a "violent felony" as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). Section 924(c)(3)(B) defines a crime of violence as one that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

[6] See Jimenez-Gonzales v. Mukasey, 548 F.3d 557, 562 (7th Cir. 2008) (noting that, "[d]espite the slightly different definitions," the Supreme Court's respective analyses of the ACCA and § 16(b) "perfectly mirrored" each other). See also United States v. Gomez-Leon, 545 F.3d 777 (9th Cir. 2008); United States v. Coronado-Cervantes, 154 F.3d 1242, 1244 (10th Cir. 1998); United States v. Kirk, 111 F.3d 390, 394 (5th Cir. 1997); United States v. Bauer, 990 F.2d 373, 374 (8th Cir. 1993) (describing the differences between the statutes as "immaterial" and that interpreting U.S.S.G. § 4.1.1, which uses the ACCA language, "is controlled by" a decision that interprets § 16(b)).

did not turn on the type of risk, but rather how a court assesses and quantifies the risk.[7] That inquiry is the same under both the ACCA and § 924(c). Both statutes require courts first to picture the "ordinary case" embodied by a felony[8], and then decide if it qualifies as a crime of violence by assessing the risk posed by the "ordinary case." This is the reasoning employed by the Ninth Circuit in invalidating § 16(b), the identical twin to § 924(c)(3)(B), as void for vagueness under Johnson. Dimaya, 803 F.3d at 1115.

Relying on James, the Fourth Circuit has squarely held that the "ordinary case" analysis applies when construing 18 U.S.C. § 16(b) and § 924(c)(3)(A). Fuertes, 805 F.3d at 500 n.6; United States v. Avila, 770 F.3d 1100, 1107 (4th Cir. 2014); The Fourth Circuit stated:

> [E]very set of conceivable facts covered by first-degree burglary does not have to present a serious risk of injury for it to qualify as a crime of violence. It is sufficient if 'the conduct encompassed by the elements of the offense, in the ordinary case, presents a

---

[7] Of course, many federal and state criminal laws include "risk" standards that employ adjectives similar to those in the ACCA and § 924(c), such as "substantial," "grave," and "unreasonable." And the Supreme Court in Johnson said it did not mean to call most of these into question. But, as Justice Scalia's majority opinion observed, that is because the vast majority of such statutes require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion; in other words, applying such a standard to "real-world conduct." By contrast, the ACCA's residual clause, and § 924(c)(3) too, require it to be applied to "an idealized ordinary case of the crime," an "abstract inquiry" that "offers significantly less predictability." Johnson, 135 S. Ct. at 2558.

[8] Both the ACCA and § 924(c)(3)(B) require courts to discern what the ordinary case of a crime is by examining the elements using a categorical approach. See, e.g., United States v. Butler, 496 Fed. Appx. 158, 161 n.4 (3d Cir. 2012); Evans v. Zych, 644 F.3d 447, 453 (6th Cir. 2011); United States v. Serafin, 562 F.3d 1104, 1108 (10th Cir. 2009); United States v. Green, 521 F.3d 929, 932 (8th Cir. 2008); United States v. Acosta, 470 F.3d 132, 134 (2d Cir. 2006); United States v. Amparo, 68 F.3d 1222, 1225 (9th Cir. 1995). Courts may not consider the factual means of committing any given offense, but must consider the nature of the offense in the "ordinary case," regardless of whether the ACCA, § 924(c)(3)(B), or § 16(b) is at issue.

> serious potential risk of injury to another.' James, 550 U.S. at 208, 127 S. Ct. 1586. As long as an offense is of a type that, by its nature, presents a substantial risk that physical force against the person or property of another may be used, it satisfies the requirements of 18 U.S.C. § 16(b).

Id.

Avila and Fuertes controls here because § 16(b) and § 924(c)(3)(B) are identical.[9] Indeed, in litigating Johnson, the government, through the Solicitor General, agreed that the phrases at issue in Johnson and here pose the same problem. In noting that the definitions of a crime of violence in both § 924(c)(3)(B) and § 16(b) are identical, the Solicitor General stated:

> Although Section 16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioner's central objection to the residual clause: Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters.

Johnson v. United States, S. Ct. No. 13-7120, Supplemental Brief of Respondent United States at 22-23 (available at 2015 WL 1284964 at *22-*23). The Solicitor General was right. Section 924(c)(3)(B) and the ACCA are essentially the same and contain the same flaws. This Court should hold the government to that concession.

---

[9] Other courts likewise require the ordinary case analysis when the statutory language of § 16(b) (and thus § 924(c)(3)(B)) is at issue. See, e.g., Keelan, 786 F.3d at 871 (relied on by the government in its Rule 28(j) letter and following the "uniform rule" of "all other circuits to have examined the issue" and adopting "ordinary case" analysis for § 16(b)); United States v. Ramos-Medina, 706 F.3d 932, 938 (9th Cir. 2012) (citing James as the source of the "ordinary case" analysis required by § 16(b)); Van Don Nguyen v. Holder, 571 F.3d 524, 530 (6th Cir. 2009) (considering § 16(b) and concluding that "[t]he proper inquiry is one that contemplates the risk associated with the proscribed conduct in the mainstream of prosecutions brought under the statute."); United States v. Sanchez-Garcia, 501 F.3d 1208, 1213 (10th Cir. 2007) (same).

Section 924(c)(3)(B), like the ACCA residual clause, thus requires the "ordinary case" analysis to assess the risk involved in a predicate offense, and how risky that ordinary case is. Fuertes, 805 F.3d at 500 n.6; Avila, 770 F.3d at 1107; Ayala, 601 F.3d at 267; Van Don Nguyen, 571 F.3d at 530; Sanchez-Garcia, 501 F.3d at 1213. Since this is the identical analytical step that brought down the ACCA residual clause, § 924(c)(3)(B) cannot survive constitutional scrutiny under the due process principles reaffirmed in Johnson. As a consequence, the residual clause cannot be used to support a conviction under § 924(c).

## CONCLUSION

Since bank robbery under § 2113(a) and (d) categorically fails to qualify as a "crime of violence" under § 924(c)'s force clause, and § 924(c)'s residual clause is unconstitutionally vague, no legal basis exists for a § 924(c) conviction.

For the foregoing reasons, Mr. Hayes respectfully requests that the Court grant this motion and dismiss Count Seven (the alleged violation of 18 U.S.C. § 924(c)) of the indictment.

Respectfully submitted,

DAVID R. SOLOMON, ESQUIRE
201 N. Charles Street, Suite 1717
Baltimore, Maryland 21201
Phone No.: 410-244-8822
Fax No. : 410-625-1028
drsolomonlaw@gmail.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of December, 2015, a copy of the foregoing was electronically forwarded to:

P. Michael Cunningham, Esquire
Assistant United States Attorney
Office of the United States Attorney
36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201

DAVID R. SOLOMON, ESQ.