**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO.: RDB-14-0577** |
| | : | |
| **JOHN EDWARD HAYES** | : | |

**..ooOoo..**

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S MOTION TO DISMISS COUNT**

The United States of America, by and through its counsel, Rod J. Rosenstein, the United States Attorney for the District of Maryland, and P. Michael Cunningham, Assistant United States Attorneys and Lauren Perry, Special Assistant United States Attorney, for said district, respectfully submits this Response to Defendant, John Edward Hayes' motions to dismiss Count Seven of the Indictment, Use of a Firearm in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c).

## FACTUAL BACKGROUND

The alleged facts were presented in the Government's consolidated response to Defendant's previously entered motions. Hayes is charged with or suspected of a series of bank robberies in Baltimore City, and Baltimore, Anne Arundel, Howard, and Montgomery Counties, as well as in Northern Virginia. Count Six of the Indictment charges Hayes with the May 1, 2014, armed robbery of the Wells Fargo Bank, located at 2320 Ashton Street, Baltimore, Maryland. Surveillance imagery and a witness' account show that Hayes displayed a black, semi-automatic handgun during this robbery. This weapon physically matches a gun taken from Hayes' person by a McDonald's security guard on May 6, 2014, which weapon is the basis of the 18 U.S.C. § 922(g) charge in Count Eight.

## Argument

### A. Bank Robbery by "Intimidation" Satisfies the Section 924(c)(3)(A) "Threatened Use" of Force Standard.

Defendant contends that armed bank robbery under 18 U.S.C. § 2113(a) and (d) fails to qualify as a predicate crime of violence for 18 U.S.C. § 924(c) under both of the tests for a crime of violence in § 924(c)(3)(A) and (B). In his view, § 924(c)(3)(A) fails to apply as a matter of statutory interpretation, while § 924(c)(3)(B) has been invalidated as unconstitutionally vague by *Johnson v. United States,* 135 S. Ct. 2551 (2015).

1. The Fourth Circuit and Other Courts Have Long Held that Bank Robbery Necessarily Involves the Threatened Use of Physical Force.

In *United States v. Adkins,* 937 F.2d 947, 950 n.2 (4th Cir. 1991), this Court stated that "[a]rmed bank robbery is unquestionably a crime of violence, because it 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" Similarly, the Court stated in *United States v. Presley*, 52 F.3d 64, 69 (4th Cir. 1995), that under the common law, "[i]ntimidation is the threat of the use of force," and that common-law robbery therefore "has as an element the use or threatened use of force." And in *United States v. Wilson*, 951 F.2d 586, 588 (4th Cir. 1991), the Court stated, "[T]he Maryland robbery offense has as an element the use or threatened use of force. The Maryland courts have interpreted state law to adopt the common law definition of robbery."

Other courts agree. *See, e.g., United States v. Mitchell*, 743 F.3d 1054, 1059 (6th Cir. 2014) (construing "fear" under Tennessee robbery law as covering "fear of bodily injury and of present personal peril from violence offered or impending" and concluding that such a standard satisfies the "physical force" requirement of the ACCA); *United States v. Shuck*, 481 Fed. Appx. 600, 603 (11th Cir. 2012)(unpub.) ("Bank robbery by intimidation, in violation of § 2113(a),

qualifies as a crime of violence" under U.S.S.G. § 4B1.2(a)(1) because it has as an element the threatened use of force); *United States v. Wright*, 215 F.3d 1020, 1028 (9th Cir. 2000) (citing § 924(c)(3)(A) and concluding that "[a]rmed bank robbery qualifies as a crime of violence because one of the elements of the offense is a taking 'by force and violence, or by intimidation'"); *United States v. Farmer*, 73 F.3d 836, 842 (8th Cir. 1996) ("[W]e think it clear that Hobbs Act robbery . . . has as an element the use, attempted use, or threatened use of physical force against the person of another" under 18 U.S.C. § 3559); *United States v. Lewis*, 405 F.3d 511, 514-15 (7th Cir. 2005) (interpreting Indiana law and concluding that "[r]obbery entails taking property from the person of another by force or threat and so is a crime of violence under" the force clause of U.S.S.G. § 4B1.2(a)(1)); *United States v. Mendez*, 992 F.2d 1488, 1491 (9th Cir. 1993) ("Robbery indisputably qualifies as a crime of violence. *See* 18 U.S.C. § 1951(b)(1) (containing element of 'actual or threatened force, or violence')."); *United States v. Jones*, 932 F.2d 624, 625 (7th Cir. 1991) ("A defendant properly convicted of bank robbery is guilty per se of a crime of violence, because violence in the broad sense that includes a merely threatened use of force is an element of every bank robbery."). Under this longstanding and commonsense approach, common law robbery – and bank robbery under § 2113(d) – are straightforward crimes of violence under the "force" clause of 18 U.S.C. § 924(c).

The Defendant's maintains, even in light of these cases, that armed bank robbery under § 2113(d) fails to satisfy § 924(c)(3)(A)'s standard for threatened force. In addition to conflicting directly with previous decisions of the Fourth Circuit, such a theory also suggests that carjacking under 18 U.S.C. § 2119 (which can also be accomplished through intimidation) fails to count as a crime of violence. The Fourth Circuit, however, has explicitly held that "[u]nder the definitional requirements of § 924(c)(3), the carjacking statute *is* a crime of violence."

*United States v. Johnson*, 32 F.3d 82, 85 (4th Cir. 1994) (interpreting earlier version of § 2119, which still could be committed through intimidation) (emphasis added). *Cf. United States v. Seay*, 553 F.3d 732, 737-38 (4th Cir. 2009) (state statute that required proof that "the conduct must *objectively* cause distress by placing the person in fear of bodily harm" satisfied U.S.S.G. § 4B1.2(a)(1)'s standard of threatened use of physical force).

2. *United States v. Torres-Miguel* Does Not Upset Longstanding Holdings that Bank Robbery is a Crime of Violence Under the Force Clause.

The defendant's argument largely boils down to this: *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), changed everything and overruled *sub silentio* the straightforward and direct statements of this Court and others regarding bank robbery and the use of force. On the defendant's view, the possibility of bank-robbery-by-poison renders even *armed* bank robbery outside the ambit of § 924(c)'s definition of a crime of violence. Although no court appears yet to have analyzed the bizarre scenario of bank robbery committed through threat of poisoning, the defendant's argument fails in any case.

As discussed above, the Fourth Circuit already has held in *Adkins* that armed bank robbery satisfies § 924(c)(3)(A) under the force clause, and it announced analogous rulings in *Presley* and *Wilson. Torres-Miguel* could not overrule those cases and never purported to do so. *See, e.g., United States v. Cobler,* 748 F.3d 570, 577 (4th Cir. 2014) (where two cases of this Court conflict, the earlier opinion controls) (citing *McMellon v. United States*, 387 F.3d 329, 334 (4th Cir. 2004) (en banc)).

Moreover, the Supreme Court has defined physical force as "force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). In measuring the degree of force needed to count as "physical force" for a violent felony,

*Johnson* [2010] drew the line at force that is sufficient to cause injury. Poisoning and other means of killing a person *satisfy* that standard. Notably, in keeping with both *Johnson* [2010] and *Presley*, the Fourth Circuit has explained: "The test in this circuit for intimidation under § 2113(a) is whether 'an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts.'" *United States v. Woodrup*, 86 F.3d 359, 363 (4th Cir. 1996) (quoting *United States v. Wagstaff*, 865 F.2d 626, 627 (4th Cir. 1989)); *United States v. Higdon*, 832 F.2d 312, 315 (5th Cir. 1987). Similarly, the Supreme Court has stated that a permissible definition of "physical force" is "[f]orce consisting in a physical act, esp. a violent act directed against a robbery victim." *Johnson* [2010], 559 U.S. at 139 (quoting Black's Law Dictionary 717 (9th ed. 2009)). It makes little sense to say that "physical force" may be defined by the force used to accomplish robbery, but then to hold that robbery fails to satisfy the definition of physical force.

The Fourth Circuit has likewise concluded that arson qualifies as "physical force" for 18 U.S.C. § 16 (and hence § 924(c)(3)). That Court explained, "Physical force" has also been defined as "an influence acting within the physical world, a force of nature." *Mbea v. Gonzales*, 482 F.3d 276, 280 (4th Cir. 2007) (quotation omitted). Thus, "the malicious burning of homes, dwellings, and other property proscribed by D.C. Code § 22-401 is a 'crime of violence' as defined by 18 U.S.C. § 16(a)." *Mbea*, 482 F.3d at 280 (citing *United States v. Mitchell*, 23 F.3d 1, 2 n.3 (1st Cir. 1994) (per curiam) (holding that federal arson statute in 18 U.S.C. § 844(i) is a crime of violence under 18 U.S.C. § 3156(a)(4)). *See also Santana v. Holder*, 714 F.3d 140, 144-45 (2d Cir. 2013) ("Fire is nothing if not a force of nature that exerts an influence within the physical world.") (quoting *Mbea*, 482 F.3d at 280). If arson necessarily involves the use of force, then so too does bank-robbery-by-threatened-poisoning.

3. The Defendant's Proposed Definition of "Physical Force" in Light of His Reading of *Torres-Miguel* Leads to Bizarre Results.

The defendant's restrictive reading of physical force also yields bizarre and unacceptable results: first-degree murder would not involve the use of physical force, because it can be accomplished "by poison," as the express terms of 18 U.S.C. § 1111 provide. At the same time, however, because the Supreme Court has said in the context of 18 U.S.C. § 16, which tracks the language of § 924(c)(3), that "a person would 'use . . . physical force against' another when pushing him," *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004), the defendant would have to agree that a federal statute limited solely to assault by pushing someone *does* involve the use of physical force. Thus, the defendant offers a deeply unpersuasive reading of § 924(c)(3)(A): a statute limited to a simple push would be a crime of violence, but first-degree murder would not qualify.

The defendant's anomalous reading would also gut the federal solicitation statute, 18 U.S.C. § 373 – which, significantly, was enacted in 1984 at the same time that Congress added the crime of violence standard to § 924(c). The solicitation statute prohibits "[s]olicitation[s] to commit a crime of violence" and makes it an offense to solicit another person to "engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States." Critically, the solicitation statute has no provision resembling the residual clause, so in defendant's view, solicitation to commit murder would no longer exist as a federal offense. And not just murder. For example, killing of a federal officer (18 U.S.C. § 1114), killing in connection with peonage (18 U.S.C. § 1581), and rape by threat of death (18 U.S.C. § 2241) would apparently cease to be predicates for § 924(c) and § 373.

Contrary to the defendant's approach, murder is properly deemed a crime of violence. *See, e.g.*, *Vargas-Sarmiento v. U.S. Dept. of Justice*, 448 F.3d 159 (2d Cir. 2006). Indeed, the

Supreme Court has cited murder as the paradigmatic example of a crime of violence. *See, e.g.*, *James v. United States*, 550 U.S. 192, 208 (2007) (giving "attempted murder" as an example of "a prototypically violent crime"); *Madsen v. Kinsella*, 343 U.S. 341, 355 (1952) (referring to "murder and other crimes of violence"). When faced with alternative possible readings of a statute, courts do not accept the readings that lead to absurdities or result in a statute with an implausibly limited application. *See, e.g.*, *United States v. Castleman*, 134 S. Ct. 1405, 1413 (2014); *United States v. Hayes*, 555 U.S. 415, 427 (2009). The Supreme Court has repeatedly warned against such incongruous readings in addressing § 924. *See, e.g.*, *Taylor v. United States*, 495 U.S. 575, 594 (1990) ("[W]e shall not read into the statute a definition . . . so obviously ill suited to its purposes."); *id.* at 596 (warning against "an implausible interpretation of a statute"); *Johnson* [2010], 559 U.S. at 139-40 (noting that "context determines meaning" and the "we do not force term-of-art definitions into contexts where they plainly do not fit and produce nonsense" (internal quotation marks omitted)).

Under the defendant's reasoning, not only would poisoning someone not constitute a use of physical force, but also electrocuting the person would not, either; killing a person with a laser apparently would not count; burning someone to death with gasoline presumably would not count; trapping someone in a trunk of a car to bake to death in summer heat or suffocate would not involve physical force; causing a dog or a piece of machinery to tear a person apart would not count; starving someone to death would not necessarily involve physical force; or, to take an example from a case interpreting § 924(c)(3) in which Justice O'Connor recently rejected an argument like defendant's, intentionally damaging controls in an airplane loaded with passengers would not involve physical force. *United States v. McGuire*, 706 F.3d 1333, 1337 (11th Cir. 2013) (O'Connor, J., sitting by designation). If the defendant believes that some of the methods

of committing murder described above do constitute physical force, while poisoning does not, he offers no persuasive rationale for drawing that distinction.

4. The Supreme Court in *Castleman* Rejected *Torres-Miguel*'s Statement that Poisoning is Not a "Use" of Force.

In *Torres-Miguel*, the Fourth Court held that a California offense that prohibits willfully threatening to commit a crime that would result in death or great bodily injury fails to have as an element the "use" of force under U.S.S.G. § 2L1.2(b) (1)(A)(ii). Critically, the Court concluded that a crime could "result" in death or great bodily injury without a defendant intending through a *mens rea* higher than negligence, or recklessness, *Garcia v. Gonzales*, 455 F.3d 465, at 468-69 (4th Cir. 2006), to "use" or threaten to "use" physical force. *Torres-Miguel*, 701 F.3d at 168-69. This portion of *Torres-Miguel* is valid and has no effect on robbery law.

But while interpreting a sentencing guideline, *Torres-Miguel* also made a point that went beyond *Leocal*, stating that: "Of course, a crime may *result* in death or serious injury without involving *use* of physical force. For example, as the Fifth Circuit has noted, a defendant can violate statutes like [the California offense] by threatening to poison another, which involves no use or threatened use of force." *Id*. What the Defendant's analysis fails to capture is that this passage addresses the meaning of the "use" of physical force – not the meaning of physical force standing alone. And even *Torres-Miguel*'s analysis regarding "use" of physical force as applied to poisoning has been overruled. In *Castleman*, the Supreme Court rejected a defendant's argument about *Leocal* and uses of force just like the one adopted in *Torres-Miguel*:

> [T]he knowing or intentional application of force is a "use" of force. Castleman is correct that under *Leocal v. Ashcroft*, 543 U.S. 1 (2004), the word "use" "conveys the idea that the thing used (here, 'physical force') has been made the user's instrument." Brief for Respondent 37. But he errs in arguing that although "[p]oison may have 'forceful physical properties' as a matter of organic chemistry, . . . no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink,"

> *ibid.* The "use of force" in Castleman's example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under Castleman's logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim. *Leocal* held that the "use" of force must entail "a higher degree of intent than negligent or merely accidental conduct," 543 U.S., at 9; it did not hold that the word "use" somehow alters the meaning of "force."

*Castleman*, 134 S. Ct. at 1414-15.

The Court in *Castleman* said it was not addressing whether knowingly or intentionally causing bodily injury counts as "physical force" under the definition used in the Armed Career Criminal Act. 134 S. Ct. at 1414-15. But, again, the Court's *Johnson* [2010] opinion defined physical force as "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. *Johnson* also endorsed a definition of physical force as "[f]orce consisting in a physical act, esp. a violent act directed against a robbery victim." *Johnson*, 559 U.S. at 139. And the author of *Johnson* [2015], Justice Scalia, concurred in *Castleman*, reaffirming what *Johnson* [2010] said about the ACCA. 134 S. Ct. at 1416-17.

**B. The Section 924(c) Residual Clause Definition of "Crime of Violence" Is Not Unconstitutionally Vague.**

1. The *Johnson* [2015] Decision

The Armed Career Criminal Act (ACCA) sets a mandatory minimum sentence of 15 years if a defendant violates 18 U.S.C. § 922(g) and has at least three prior convictions for either a "serious drug offense" or a "violent felony." 18 U.S.C. § 924(e)(1). In *Johnson* [2015], the Supreme Court held that the ACCA's residual clause, *i.e.*, the provision that defines a "violent felony" to include an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), is vague and, therefore, imposing an increased sentence under the residual clause "violates the Constitution's guarantee

of due process."[1] *See Johnson*, 135 S. Ct. at 2563. The Court overruled those portions of its decisions in *James v. United States*, 550 U.S. 192 (2007), and *Sykes v. United States*, 131 S. Ct. 2267 (2011), which previously rejected dissenting justices' contention that the residual clause was vague. *Johnson*, 135 S. Ct. at 2563.

A combination of factors that are *not* present in the instant case convinced the *Johnson* Court to find the ACCA's residual clause vague. The Court determined that the clause "leaves grave uncertainty about how to estimate the risk posed by a crime." *Id.* at 2557. The Court was concerned that the assessment was tied to considering risk in an "ordinary case," but without accounting for "real-world facts or statutory elements." *Id.* The Court also found that the ACCA residual clause "leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558. The Court held that ACCA's structure "forces courts to interpret 'serious potential risk' in light of the four enumerated crimes." *Id.* This was problematic because the degree of risk posed by the enumerated crimes was "'far from clear.'" *Id.* Additionally, the Court stressed that it had repeatedly attempted to craft a principled standard for the residual clause but had failed to do so, which further supported its vagueness. *Id.*

Here, the Defendant incorrectly argues that the residual clause of 18 U.S.C. § 924(c) must be declared unconstitutional for the same reasons as the ACCA's residual clause. The Government acknowledges that, like the ACCA's residual clause, Section 924(c)(3)(B) involves a risk-based analysis of the "ordinary case" of a predicate offense, and that the Supreme Court in *Johnson* [2015] identified the ordinary-case analysis as among the problematic features of ACCA's residual clause. 135 S. Ct. at 2557-58, 2561. However, *Johnson* did not turn solely on

---

[1] The relevant ACCA subsection, in full, defines a "violent felony" as an offense that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C § 924(e)(2)(B)(ii).

the ordinary-case inquiry, and § 924(c)(3)(B) presents circumstances materially different from those at issue in *Johnson*.

Importantly, the *Johnson* Court believed that "the uncertainties in [ACCA's] residual clause may be tolerable in isolation," but their presence *together* led the Court to its holding. *Id.* at 2560. As discussed below, the same confluence of factors that led the Court to declare the ACCA's residual clause unconstitutional is not present in § 924(c)(3)(B). Unlike the ACCA, the Section 924(c) residual clause contains no confusing list of enumerated offenses; it has been limited to a narrow risk of force during the commission of the offense; and the Supreme Court never has disagreed about its proper construction. Based on these statutory differences, *Johnson* [2015] does not support the conclusion that § 924(c)(3)(B) is vague.

2. *Johnson*'s Holding Does Not Extend To § 924(c)(3)(B).

Title 18, U.S. Code, Section 924(c)(1)(A) provides for a mandatory consecutive term of imprisonment upon "any person who, during and in relation to any crime of violence . . . , uses or carries a firearm, or who, in furtherance of any such crime, possess a firearm[.]" Section 924(c)(3)(B) defines a "crime of violence" as, *inter alia*, any felony offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B).

Section 924(c)(3)(B)'s structure differs from the ACCA because it does not contain an introductory list of enumerated crimes followed by an "otherwise" provision that the *Johnson* Court treated as qualifying the predicate offenses. The presence of the enumerated list of offenses in the ACCA's residual clause was a determinative factor in *Johnson*. The enumerated list had troubled members of the Court since *James*. *See*, *e.g.*, *James*, 550 U.S. at 215-16, 230 n.7 (Scalia, J., joined by Stevens and Ginsburg, J.J., dissenting) (stating that comparing a

predicate offense with its closest analog among enumerated offenses is an unhelpful test if the analog is not obvious, because the listed offenses have little in common). The Court also struggled with the enumerated list in *Begay v. United States*, where even the majority was concerned that "the examples are . . . far from clear with respect to the degree of risk each poses." 553 U.S. 137, 143 (2008).

The continuing confusion over how to interpret the list, in conjunction with the residual clause, ultimately convinced the *Johnson* Court of ACCA's vagueness. Indeed, the interpretive difficulties posed by the list of enumerated crimes pervaded the Court's analysis. For example, the Court attributed part of the "uncertainty about how much risk it takes for a crime to qualify" to the residual clause's structure, which "forces courts to interpret 'serious potential risk' in light of the four enumerated crimes—burglary, arson, extortion, and crimes involving the use of explosives." *See Johnson*, 135 S. Ct. at 2558. The Court again referred to the enumerated crimes in explaining why its decisions in *Begay* and *Sykes* did "not succeed in bringing clarity to the meaning of the residual clause." *Id.* at 2559 (*Begay*'s test, which turned on similarity of crime to the enumerated offenses, failed because "the enumerated crimes are not much more similar to one another in kind than in degree of risk posed"); *id.* ("common sense" used in *Sykes* was not reliable criterion because "[c]ommon sense has not even produced a consistent conception of the degree of risk posed by each of the four enumerated crimes"). And, critically, the Court distinguished other statutes requiring risk-based assessments in part because they do *not* "link[ ] a phrase such as 'substantial risk' to a confusing list of examples." *Id.* at 2561. Section 924(c)(3)(B), like the statutes the Court distinguished in *Johnson*, contains no "confusing list" to cloud its analysis.

Moreover, § 924(c)(3)(B) contains language identical to many other federal and State statutes. *See*, *e.g.*, 18 U.S.C. § 16(b); 18 U.S.C. § 3142(f)(1)(A) and (g)(1) (bail statute); 18 U.S.C. § 521(d)(3)(C) (enhanced sentence for criminal gang members); 18 U.S.C. § 3663A(c)(1)(A) (mandatory restitution); 18 U.S.C. § 5032 (juvenile transfer statute); R.I. Gen. Laws 1956, § 21-28-4.07.2(a); Utah Code Ann. § 76-9-802(5)(b)(i). Thus, while the Supreme Court, in *Johnson* [2015], believed that striking the ACCA's residual clause would have little effect on other risk-based statutes, *see Johnson*, 135 S. Ct. at 2561, a decision striking § 924(c)(3)(B) would significantly impact other federal and State laws.

a. Section 924(c)(3)(B) Does Not Go Beyond the Elements of the Offense to Consider Potential Extra-Offense Conduct.

Another uncertainty about the ACCA that the Supreme Court identified in *Johnson*, but absent from § 924(c)(3)(B), is the necessity for courts to go "beyond evaluating the chances that the physical acts that make up the crime injure someone" and to evaluate the risk for injury even "after" completion of the offense. *Id.* at 2557; *see also id.* at 2559 (noting that "remote" physical injury could qualify under the ACCA, but that the clause does not indicate "how remote is too remote"). The Court explained that the ACCA's inquiry into whether a crime "involves conduct" that presents too much risk of injury goes beyond the offense elements. *Id.* at 2557. "The inclusion of burglary and extortion among the enumerated offenses," the Court further explained, confirmed that courts assessing risk had to go "beyond evaluating the chances that the physical acts that make up the crime will injure someone." *Id.* That was so because risk of injury could arise in a burglary *after* the breaking and entering had occurred, and an extortionist might become violent *after* making his demand. *Id.* The consideration of post-offense conduct was therefore part of ACCA's indeterminate "wide-ranging inquiry." *Id.*

Section 924(c)(3)(B), by contrast, is significantly narrower. As the Supreme Court expressly observed in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), unlike the ACCA residual clause, in which the "substantial risk" inquiry relates "to the possible effect of a person's conduct," the § 16(b) (and Section 924(c)(3)(B)) residual clause inquiry "relates to the use of force" "'in the course of committing the offense.'" *Id.* at n.7, 10 (quoting 18 U.S.C. § 16(b)). The Fourth Circuit recently noted just this point in *Fuertes*. *United States v. Fuertes*, __ F.3d __, 2015 WL 4910113, *9 (4th Cir. 2015) ("The residual clause makes plain . . . that the relevant inquiry is not whether there is a risk of *any* person using force in any way tangentially related to an on-going offense, but rather whether there is a substantial risk of the *defendant* doing so."). This means that the assessment is confined to the risks that arise during the commission of the offense itself. *See Leocal*, 543 U.S. at 7 (to determine whether an offense is a crime of violence, a court must "look to the elements and the nature of the offense of conviction"); *United States v. Hernandez-Neave*, 291 F.3d 296, 299 (5th Cir. 2001) ("The nature of the crime is enclosed within the completion of [the offense] conduct."); *United States* v. *Serafin*, 562 F.3d 1105, 1109 (10th Cir. 2009) (emphasizing "the textual difference between § 16(b) and" the ACCA residual clause, and explaining that "for an offense to qualify as a § 16(b) crime of violence, the risk of force must arise in the course of *committing* the crime and not merely as a *possible result*" (emphasis in original)). Unlike the ACCA residual clause, Section 924(c)(3)(B) does not go beyond "the physical acts that make up the crime." *Johnson*, 135 S. Ct. 2557. Further, Section 924(c)(3)(B) looks at the risk of the "use of force" rather than the much broader "risk of injury." The provision's focus on the use of force during an offense, rather than on the potential risk and effects of the offense, limits its reach and avoids the kind of speculation about extra-offense conduct that *Johnson* denounced. *See id.* at 2557, 2559.

b. The Supreme Court Has Not "Repeatedly" Failed To Construe § 924(c)(3)(B).

The third significant difference between *Johnson* and the instant case is the *Johnson* Court's emphasis on its own "repeated" inability to develop a "principled and objective standard" for the ACCA residual clause. *Johnson*, 135 S. Ct. at 2558. This concern, also absent here, further animated the Court's decision to find the ACCA residual clause vague. *See id.* at 2559 (noting that *Johnson* [2015] was the Supreme Court's "fifth [case] about the meaning of the [ACCA] residual clause"); *see also Sykes*, 131 S. Ct. at 2287 (2011) (Scalia, J., dissenting) (stating that the Court's repeated failure in addressing the ACCA residual clause is "[w]hat sets ACCA apart" and "confirms" its vagueness). The *Johnson* [2015] Court expressed clear frustration that its ACCA decisions had been a "failed enterprise." *Johnson*, 135 S. Ct. at 2560.

Unlike with respect to the ACCA residual clause, the Supreme Court has rendered only one significant § 16(b) (and, by extension, only one § 924(c)(3)(B)) decision, which occurred over ten years ago and caused no controversy among the justices. *See Leocal*, 543 U.S. at 1. In *Leocal*, a *unanimous* Court had no difficulty in adopting an interpretive framework that identified one offense (burglary) as the "classic example" of a § 16(b) qualifying offense, and another (DUI) that was not. *See Leocal*, 543 U.S. at 10. The Court's analysis (which was joined by Justice Scalia, the author of *Johnson* [2015] and the principal critic of the ACCA residual clause's vagueness leading up to *Johnson*) belies a claim that § 924(c)(3)(B) is too uncertain to be readily applied and to permit evenhanded application.

c. The Defendant Has Not Identified The Same Degree of Confusion By Lower Courts About § 924(c)(3)(B) As About ACCA.

In addition to its other reasons for finding the ACCA's residual clause vague, the *Johnson* Court observed that there were numerous lower court splits about "the nature of the

inquiry" that a court should conduct under the ACCA. *Johnson*, 135 S. Ct. at 2560. Significantly, the Court noted that the disagreements "went beyond matters of degree." *Id.* The defendant has not shown anywhere near the same level of confusion among lower courts about § 924(c)(3)(B) (or Section 16(b)).

To be sure, there has been some disagreement in the lower courts about whether courts should import to § 16(b) aspects of the ACCA analysis. But because *Johnson* [2015] has stricken the ACCA's residual clause, any debate on that matter is settled. Section 16(b) (and, by extension, Section 924(c)(3)(B)) stands on its own. If courts continue to disagree about whether "this or that" offense qualifies under the statute, *Johnson*, 135 S. Ct. at 2560, the Supreme Court may step in to decide the question, but in the meantime, those disagreements are not evidence of vagueness. "That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense." *United States v. Petrillo*, 332 U.S. 1, 5 (1947); *see also Johnson*, 135 S. Ct. at 2560 ("even clear laws produce close cases").

d. <u>Section 924(c)(3)(B) Is Materially Narrower Than ACCA</u>.

Under *Leocal*, an aggravated felony for purposes of § 16(b) (and, by extension, a "crime of violence" for purposes of § 924(c)(3)(B)) is limited to "offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense." *Leocal*, 543 U.S. at 10. There, the Supreme Court specified that § 16(b) includes only "violent, active" crimes. *Id.* at 11. To qualify as a predicate offense under this framework, the offense must proscribe conduct that (1) naturally involves a disregard of a substantial risk of force against another, and (2) the risk of force must arise during the course of committing (3) an active, violent offense. *Id.* at 10-11; *see also United States v. Lanier*, 520 U.S.

259, 266 (1997) (clarity may be provided by judicial gloss on an otherwise uncertain statute). In fact, the federal public defender's brief in *Johnson* [2015] agreed that "[t]hese requirements are meaningfully different than the ACCA's residual clause and make § 16(b) narrower." *See* Supp. Reply Br. for the Petitioner, *Johnson v. United States*, 2015 WL 1641122, at *15. The Fourth Circuit's recent decision in *Fuertes* supports this point. *See* 2015 WL 4910113, *9 (noting that the residual clause of U.S.S.G. Section 4B1.2 (and ACCA) was "more expansive" because it covered any felony that "involves conduct that presents a serious potential risk of physical injury to another").

Under § 924(c)(3)(B) (and § 16(b)), the ordinary case is defined by the elements of the offense, and a court does *not* consider risks that arise only after the physical acts constituting the crime have been completed. Instead, the court asks whether the offense elements would "naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense." *Leocal*, 543 U.S. at 11. The analysis is non-speculative and is consistent with *Johnson*. If the risk of the use of force is naturally present in the elements of the offense, the offense qualifies as a crime of violence under § 924(c)(3)(B) (or § 16(b)). This alleviates the concern that the *Johnson* Court expressed about ACCA's far ranging inquiry into conduct going beyond the offense elements.[2]

---

[2] As courts have observed, inquiry into the risk of force during commission of the offense significantly narrows § 16(b) (and, by extension, Section 924(c)(3)(B)). *See, e.g.*, *United States v. Diaz-Diaz*, 327 F.3d 410, 413-14 (5th Cir. 2003). Indeed, courts have applied that narrowing principle to numerous offenses. *See id.* (possession of shotgun not a § 16(b) offense because crime is complete upon knowing possession of the weapon); *United States v. Medina-Anicacio*, 325 F.3d 638, 645 (5th Cir. 2003) (possession of concealed dagger not a crime of violence "[b]ecause an offender perpetrates the crime once he takes possession of and conceals the dirk or dagger, [and so] it is unlikely that any physical force would be used in the process"); *United States v. Chapa-Garza*, 243 F.3d 921, 924 (5th Cir. 2001) (DWI not a crime of violence because force against another "is virtually never employed to commit this offense"); *United States v. Velazquez-Overa*, 100 F.3d 418, 422 (5th Cir. 1996) (indecency with a child by sexual contact is

There is nothing vague or speculative about asking whether an offense "naturally" involves a risk of the use of force during its commission, for purposes of § 16(b). The phrase "by its nature" in § 16(b) simply triggers application of the categorical approach, which, of course, looks at offense elements. *See United States v. Aragon*, 983 F.2d 1306, 1312 (4th Cir. 1993) ("This court has previously held that the language 'by its nature' [in § 16(b)] relates to the intrinsic nature of the crime, not to the facts of each individual commission of the offense.") (emphasis in original); *United States v. Velazquez-Overa*, 100 F.3d 418, 420 (5th Cir. 1996) ("the phrase 'by its nature' compels a categorical approach"). Furthermore, the Supreme Court has long examined the "nature" of predicate offenses for enhancement purposes. *See, e.g.*, *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) (comparison of predicate offense to its "generic" counterpart requires court to assess "whether the state statute shares the nature of the federal offense that serves as a point of comparison") (emphasis added).[3]

In any event, Acts of Congress enjoy a strong presumption of validity. *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32 (1963). A court's duty is to construe, rather than to condemn, a statute. *See Skilling v. United States*, 561 U.S. 358, 403 (2010). The Supreme Court was convinced by "[n]ine years' experience," and by multiple prior decisions, that the ACCA's residual clause was not susceptible to principled construction. *Johnson*, 135 S. Ct. at 2560. Here, however, § 924(c)(3)(B) does not possess the "sum" of factors that led the

---

a crime of violence because, due to disparity between adult perpetrator and child victim, "there is a significant likelihood that physical force may be used to perpetrate the crime").

[3] As for the degree of risk necessary, courts have made clear that the need for a "substantial" risk is not vague. *See Aragon*, 983 F.2d at 1313-15 (easily applying "substantial risk" standard); *United States v. Sanchez-Espinal*, 762 F.3d 425, 431 (5th Cir. 2014) (equating "substantial risk" of § 16(b) with "'a strong probability'") (citation omitted); *United States v. Flores*, 63 F.3d 1342, 1373-74 (5th Cir. 1995) (holding that concept of "substantiality" is commonly understood and needs no further explanation).

*Johnson* Court to its conclusion. *Id.* For the reasons stated above, this Court should continue to construe the definition of "crime of violence" in 18 U.S.C. § 16(b) (and § 924(c)(3)(B)) and hold that the Section 924(c) residual clause is not unconstitutionally vague.

**CONCLUSION**

For the reasons stated above, the United States respectfully submits that this Court should deny Defendant's motion to dismiss Count Seven.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

/ss/
By: ________________________
P. Michael Cunningham
Assistant United States Attorney
Lauren Perry
Special Assistant United States Attorney