**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*P. Michael Cunningham*
*Assistant United States Attorney*
*michael.cunningham@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*Direct: 410-209-4884*
*Main: 410-209-4800*
*Fax: 410-962-3091*

December 14, 2015

Via email: drsolomon2@aol.com

FILED ENTERED
LOGGED RECEIVED

DEC 22 2015

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY DEPUTY

David R. Solomon, Esquire
Glaser and Solomon LLC
201 North Charles Street, Suite 1717
Baltimore, MD 21201

Re: *Unites States v. John Edward Hayes*
Criminal No.: RDB-14-0577

Dear Mr. Solomon:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by December 18, 2015, it will be deemed withdrawn. The terms of the agreement are as follows:

Offenses of Conviction

1. The Defendant agrees to plead guilty to Counts Six, Seven and Eight of the Indictment now pending against him, which charge him with armed bank robbery, use of a firearm during the commission of a crime of violence, and illegal possession of a firearm, in violation of 18 U.S.C. §§ 2113(a)(d) and (f), 18 U.S.C. § 924(c)(1)(A), and 18 U.S.C. § 922(g)(1), respectively. The Defendant admits that he is, in fact, guilty of those offenses and will so advise the Court.

Elements of the Offenses

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

a. Armed Bank Robbery, 18 U.S.C. § 2113(a)(d) and (f) (Count Six)

i. On the date and place alleged in the Indictment, the Defendant intentionally took from the person, or presence of the person, money or property;

ii. The money or property belonged to, or was in the possession of, a federally insured bank at the time of the taking;

iii. The Defendant took the money or property by means of force and violence; and

iv. The Defendant assaulted one or more people by the use of a dangerous weapon while engaged in taking the money.

b. Use of a Firearm In Furtherance Of a Crime of Violence, 18 U.S.C. § 924(c) (Count Seven)

i. The Defendant committed the crime alleged in Count Six, namely, armed robbery of a bank, which is a crime of violence; and

ii. The Defendant knowingly used a firearm during and in furtherance of the commission of the armed bank robbery charged in Count Six.

c. Possession of a Firearm by a Prohibited Person, 18 U.S.C. § 922(g)(1), (Count Eight)

i. First, that the Defendant knowingly possessed a firearm, to wit: one FEG, Model PA63, 9mm handgun, serial number BF171715;

ii. Second, that the Defendant was previously convicted of a crime punishable by imprisonment for a term exceeding one year, and his civil rights were not restored following the conviction; and

iii. Third, the possession of the firearm was in or affecting interstate commerce.

Penalties

3. The maximum sentence provided by statute for the offenses to which the Defendant is pleading guilty are as follows: Count Six: Imprisonment for not more than 25 years, $250,000 fine and five years supervised release; Count Seven: Life (mandatory minimum consecutive term of 7 years because a firearm was brandished during the robbery), $250,000 fine and five years supervised release; and Count Eight: Imprisonment for not more than 10 years,

followed by a term of supervised release of not more than 3 years and a fine of $250,000.00. In the event your client is determined to have three previous convictions by any court referred to in 18 U.S.C. 922(g)(1) for a violent felony or serious drug offense, or both, committed on occasions different from one another, your client shall be fined under Title 18 and imprisoned for a term not less than fifteen years, and notwithstanding any other provision of the law, the court shall not suspend the sentence of, or grant a probationary sentence to your client with respect to the conviction under section 922(g). In addition, the Defendant must pay $300.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts at Attachment A, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

b. Guideline Stipulation

(i) Count 6: Pursuant to U.S.S.G. § 2B3.1(a), the base offense level is 20. There is an upward adjustment of 2 levels pursuant to §2B3.1(b)(1) because the property of a financial institution was taken. **Total Offense level 22.**

(ii) The bank robberies reflected in Counts 1, 2, 3, 4, and 5 are relevant conduct for the purposes of the offense calculation under the advisory sentencing guidelines. Moreover, pursuant to U.S.S.G. § 3D3.2(d), the bank robberies do not group.

| | | |
|---|---|---|
| Counts 1 through 5: | Base offense level | 20 |
| | Bank | +2 |

(iii) The highest total offense level is 22. Counting all the bank robberies as separate groups, there are 6 units, resulting in an addition of 5 levels, pursuant to U.S.S.G. § 3D1.4, for a total offense level by operation of the grouping rules in Chapter 3D of **27**.

(iv) Count 8: Pursuant to U.S.S.G. § 2K2.1(a)(4), the base offense level is 20. There are no guideline adjustments for this count, resulting in an offense level of 20. Whether this count groups pursuant to Chapter 3D, or not, the offense level for Counts 1-6 and 8 is **27**.

(v) This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. However, this Office will not make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level reduction. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. The resulting guideline offense level after acceptance for Counts ~~One~~ Six and Eight is **twenty-five (25)**.

(v) Count 7: Pursuant to 18 U.S.C. § 924(c)(1)(A)(ii), there is a mandatory consecutive 7 year term of imprisonment because the firearm was brandished, in addition to the punishment imposed for any other counts of conviction.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

Restitution

10. The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses, that is $17,697.11. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

Collection of Financial Obligations

12. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The Defendant will promptly submit a completed financial statement to the United States Attorney"s Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Waiver of Appeal

13. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a. Pursuant to Rule 11(a)(2), the Defendant specifically reserves the right to appeal the District Court's ruling on the Defendant's Motion to Dismiss Count Seven, charging 18 U.S.C. § 924(c). The Defendant knowingly waives all other rights, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

The defendant also reserves the right to appeal the adverse ruling on his motion to suppress oral statements.

b. The Defendant specifically reserves the right to appeal the determination of his criminal history, particularly he may appeal any determination respecting his status as a career offender under U.S.S.G. § 4B1.1, as that would be applicable to Count Six, and/or his status as an armed career criminal pursuant to U.S.S.G. § 4B1.4, as that would be applicable to Count Seven.

c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

14. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

Court Not a Party

15. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

16. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: ____________________
P. Michael Cunningham
Assistant United States Attorney
Lauren Perry
Special Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

12/22/15
Date

John Hayes
John Edward Hayes

I am John E. Hayes' attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement ~~is an~~ informed and voluntary one.

12/22/15
Date

David R. Solomon, Esquire

**Attachment A**

**Statement of Facts**

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

John Edward Hayes, ("Hayes"), age 45, was until May 2014, a resident of Baltimore, Maryland. Between February and April, 2014, he engaged in series of robberies of Federal Deposit Insurance Corporation insured banks, concluding with the May 1, 2014 armed robbery of the SunTrust Bank, located at 10000 Baltimore National Pike, Columbia, Maryland, when he stole $1,400. During that robbery, he used, displayed and brandished an FEG, Model PA63, 9mm handgun, serial number BF171715, which firearm was taken from his possession when he was taken into custody on May 6, 2014. Hayes was encountered in the restroom of a McDonald's fast food franchise by a security officer, and seriously injured by a gunshot from the security guard.

In addition to the May 1, 2014, robbery, Hayes also committed the following robberies of FDIC insured banks:

On February 3, 2014, he robbed the PNC Bank at 1100 North Charles Street, Baltimore, stealing $1,631. Hayes presented a note to the teller and announced it was a stick-up and to give him money but no dye-packs.

On February 18, 2014, Hayes robbed the Wells Fargo Bank at 1860 North Rolling Road, Catonsville, stealing $7,339.11. He was disguised with a wig, a woman's hat and makeup and carried a woman's purse. Hayes presented a deposit slip to a teller on which had been written, "this is a hold up." According to the teller, Hayes said he was armed with a hand gun, and repeatedly said, "give me all the money with no dye packs and don't press the alarm," or words to that effect.

On March 14, 2014, Hayes robbed the same Wells Fargo Bank at 1860 North Rolling Road, stealing $3,520. On this date, Hayes was not wearing a disguise. He announced to the teller, "I have a gun," and demanded money. Hayes said, "no funny business, no dye packs," or words to that effect.

On April 21, 2014, Hayes robbed the Capitol One Bank at 11261 New Hampshire Avenue, Silver Spring, Maryland, stealing $2,700. Hayes entered the bank, approached a teller and said, "give me all you $100, $50, $20, $10. Give me the money or I'll shoot one of your co-workers. I have a gun," or words to that effect.

On April 28, 2014, Hayes robbed the Capitol One Bank at 11241 Georgia Avenue, Wheaton, Maryland, stealing $1,107. Hayes handed a teller a folded piece of paper on which was written, "I have a gun! I don't [sic] want no dye packs or gps. Only $100, $50, $20 $10! or I will shoot your co-worker!"

The total amount Hayes stole in the six bank robberies was $17,697.11.

John Hayes
John Edward Hayes

12/22/15
Date

David R. Solomon, Esquire

12/22/15
Date